Slip Op. 22-112

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> REBAR TRADE ACTION COALITION, ET AL., <br><br> Defendant-Intervenors. | Before: Judge Gary S. Katzmann <br> Court No. 22-00149 |

## OPINION AND ORDER

[Plaintiff's Motion to Stay the proceedings is denied.]

Dated: September 22, 2022

Andrew T. Schutz, Jordan C. Kahn, Kavita Mohan, and Michael S. Holton, Grunsfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.

Kelly Geddes, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director. Of counsel on the brief was W. Mitch Purdy, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Alan H. Price, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenors Rebar Trade Action Coalition, Byer Steel Group, Inc., Commercial Metals Company, Gerdau Ameristeel U.S. Inc., Nucor Corporation, and Steel Dynamics, Inc.

    Katzmann, Judge: Before the court is Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret

A.S.'s ("Kaptan") Motion to Stay the case, Court No. 22-00149 ("2022 Case"), pending resolution

of a prior case involving the same countervailing duty order. As the balance of interests does not favor the Plaintiff, the motion is denied.

## BACKGROUND

In the case filed in this court in 2022, that is the subject of the stay motion, Kaptan, a Turkish producer and exporter of steel concrete reinforcing bar, seeks review of the final results from the U.S. Department of Commerce's ("Commerce") countervailing duty administrative order, published in <u>Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019</u>, 87 Fed. Reg. 21,640 (Dep't of Commerce, April 12, 2022) ("<u>Final Results</u>"). Kaptan now moves for a stay of proceedings pending the final resolution of its separate action filed in 2021 in this court arising from the previous administrative review of the same countervailing duty order, <u>Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States</u>, No. 21-00565 ("<u>2021 Case</u>"). <u>See</u> Pl.'s Mot. to Stay at 1, Jul. 20, 2022, ECF No. 22 ("Pl.'s Br.").

Kaptan argues that the court should stay this action because the legal issues underlying three of its four claims in the instant action are "virtually identical" to the legal issues it raises in the <u>2021 Case</u>. Pl.'s Br. at 2, 7. According to Kaptan, the issues "flow from Commerce's determination that Nur was a cross-owned input supplier of Plaintiff" and "[t]he basis on which Commerce found Nur to be a cross-owned inputs supplier, i.e., that it supplied Plaintiff with scrap during the period of review, is identical" in both administrative reviews ("AR"). <u>Id.</u> at 2–3. Kaptan further argues that the stay will not harm or prejudice the other parties, and that the court has stayed proceedings in analogous circumstances. <u>Id.</u> at 6–7.

Defendant United States ("the Government") opposes Kaptan's motion. The Government argues that because Kaptan challenges separate AR results from different periods of review

("POR"), the court need not reach the same conclusion on the legal issues. See Def.'s Resp. in Opp. to Pl.'s Mot. to Stay at 4, Aug. 10, 2022, ECF No. 23 ("Def.'s Br."). Further, the Government argues that the 2021 Case "does not involve all of the issues raised before the [c]ourt in this proceeding, [and] thus additional briefing […] would need to be filed [in the 2022 Case] regardless of the outcome of [the 2021 Case]." Id. at 5. The Government also contends that parties may easily raise the same arguments without expending significant effort, and thus granting the stay would only conserve limited resources. Additionally, the Government argues that the prospect of appeal would not warrant an indefinite stay, that Kaptan has failed to meet its burden by making out a clear case of hardship, and that the proposed stay presents a fair possibility of harm to the Government. Id. at 5–6.

Defendant-Intervenors Rebar Trade Action Coalition and its individual members ("RTAC") have expressed no position regarding Kaptan's Motion to Stay. Pl.'s Br. at 8.

## STANDARD OF REVIEW

The court has broad discretion in granting a stay of proceedings. See, e.g. Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997); see also Procter & Gamble Co. v. Kraft Foods Glob., Inc., 549 F.3d 842, 849 (Fed. Cir. 2008) (citing Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936)). In the touchstone Landis opinion, Justice Cardozo wrote that this discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254–55; see also Groves v. McDonough, 34 F. 4th 1074, 1080 (Fed. Cir. 2022). When deciding on a motion to stay the case, the court will exercise its judgment and "weigh competing interests and maintain an even balance." Landis, 299 U.S. at 255.

A court's discretion to stay proceedings is not without bounds. Cherokee Nation, 124 F. 3d. at 1416. A protracted stay, or a stay so extensive that it is "immoderate or indefinite, may be an abuse of discretion," Groves, 34 F. 4th at 1080 (citing Landis, 299 U.S. at 257; Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983)). To issue such a protracted or indefinite stay, there must be a "pressing need" and the tribunal must "balance [the] interests favoring a stay" against the opposing interests. Id. This balancing requires examination of the court's "paramount obligation to exercise jurisdiction timely in cases properly before it." Id. (citing Cherokee Nation, 124 F.3d at 1416) (emphasis added). If the stay has "even a fair possibility" to damage another, the movant "must make out a clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 225 (emphasis added); Columbia Forest Prod. v. United States, 42 CIT __, __, 352 F. Supp. 3d 1274, 1276 (2018); see also Georgetown Steel Co. v. United States, 27 CIT 550, 553, 259 F. Supp. 2d 1344, 1346–47 (2003).

## DISCUSSION

Kaptan submits that: (1) staying the proceedings would conserve resources; (2) the Government would not suffer harm from the stay; and (3) the court should look to analogous cases. The court denies Plaintiff's motion for the reasons set forth below.

1. Kaptan argues that staying the proceedings would promote judicial economy. Pl.'s Br. at 4 (citations omitted). According to Kaptan, the issues in its complaint "flow from Commerce's determination that Nur was a cross-owned input supplier of Plaintiff" and "[t]he basis on which Commerce found Nur to be a cross-owned inputs supplier, i.e., that it supplied Plaintiff with scrap during the period of review, is identical" in both administrative reviews ("AR"). Id. at 2–3.

In support of its argument, Kaptan cites several cases of this court where proceedings were stayed pending resolution of an issue that was common to the actions. Those cases, however, involved a specific issue such as zeroing that was on appeal before the Federal Circuit. See, e.g., Union Steel Mfg. Co. v. United States, 37 CIT 346, 354, 896 F. Supp. 2d. 1330, 1335–36 (2013), as amended (May 1, 2013); SKF USA Inc. v. United States, 36 CIT 842, 843–46 (2012); NSK Bearings Europe Ltd. v. United States, 36 CIT 854, 855–58 (2012); RHI Refractories Liaoning Co. v. United States, 35 CIT 407, 408, 774 F. Supp. 2d 1280, 1282 (2011). In those cases, a stay would promote judicial economy as the Federal Circuit decision would be determinative of the legal issue.

The instant case does not fall into this special category. Unlike the stays granted in the aforementioned cases, the Federal Circuit is not currently reviewing a common legal issue that may determine the outcome of the two cases in issue here. Rather, both actions filed by Kaptan are pending before this very court. In the current action, as the Government points out, additional briefing would need to occur on Commerce's specificity finding issue regardless of how the 2021 Case is decided, as that legal issue is not common to both actions. Def.'s Br. at 5. Even if there are similar issues that are "virtually identical" across both actions as Kaptan argues, the parties can easily raise the same arguments without significant effort, and the court can examine the arguments again without significantly expending resources, as both actions are ultimately pending before the court.[1] Pl.'s Br. at 4–6; Def.'s Br. at 5.

---

[1] Kaptan also points to a previous case that involved two actions before the court, and argues that a stay may warranted "even where the other litigation would only clarify or simplify the issues." Pl.'s Br. at 5 (citing An Giang Agri. & Food Imp. Exp. Co. v. United States, 28 CIT 1671, 1672, 350 F. Supp. 2d 1162, 1163 (2004)). Of course, the decisions of other trial courts are not binding. Algoma Steel Corp. v. United States, 865 F.2d 240, 243 (Fed. Cir. 1989). In any event, it can be noted that the stay granted in An Giang was a "relatively modest stay" of limited duration that requested a stay of proceedings until the court affirmed Commerce's redetermination

The court also notes that although the two cases may share commonalities in some of the issues presented, "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." Jiaxing Bro. Fastener Co., Ltd. v. United States, 822 F.3d 1289, 1299 (Fed. Cir. 2016) (quoting Qingdao Sea-Line Trading Co., Ltd. v. United States, 766 F.3d 1378, 1387 (Fed. Cir. 2014)). The court's review of Commerce's determination is limited to the underlying administrative record developed in each administrative review, see 19 U.S.C. § 1516a(a)(2); 28 U.S.C. § 2635(b)(1). For example, just because an issue might be remanded in the 2021 Case, that does not mean that remand would necessarily be appropriate on the specific factual records of the 2022 Case.

In sum, while the proposed stay might "temporarily conserve resources by pausing litigation" in this action, see NLMK Pennsylvania, LLC v. United States, 45 CIT __, __, 553 F. Supp. 3d 1354, 1366 (2021), it would not significantly conserve resources. Unlike other stays that involved a pending case before the Federal Circuit that may provide controlling precedent, or unique circumstances that may provide some benefit in staying one action, Kaptan's proposed stay would not meaningfully advance judicial economy.

---

following the court's remand issues in the previous year. An Giang, 350 F. Supp. 2d at 1163. Moreover, the plaintiffs in An Giang had expressed the desire to voluntarily dismiss the case depending on the court's post-remand opinion. Id. Under these unique circumstances, an argument for conservation of resources may have some merit.

The instant case, however, does not fall under these unique circumstances. Kaptan is not seeking a relatively modest stay, but rather seeks "further appeal(s) to the U.S. Court of Appeals for the Federal Circuit" if necessary to "finalize" the issues. Pl.'s Br. at 5. Nor has Kaptan expressed the desire to voluntarily dismiss the claim as the plaintiffs did in An Giang. See generally, Pl.'s Br. Under these circumstances, it is questionable whether granting Kaptan's motion would conserve resources in the way the An Giang court envisioned. Further, as will be discussed in more detail below, Kaptan's proposed stay for a "final resolution" of the issues is overly extensive. See Pl.'s Br. at 9.

   2. Kaptan further argues that there is no evidence of harm to the Government or RTAC if the stay is granted. Pl.'s Br. at 6. Kaptan's argument rests on the premise that Commerce may continue to administer current reviews, that the stay would not delay final resolution of the administrative review appeal before the court, and that the resources of all parties will be conserved. Id.

  However, as the Government correctly argues, "some harm is inherent in any denial of the right to proceed" because parties have an interest to quickly resolve the dispute before the court. Neenah Foundry Co. v. United States, 24 CIT 202, 205 (2000); see also NLMK Pennsylvania, 553 F. Supp. 3d at 1365. Public policy also favors expeditious resolution of disputes. Kahn v. General Motors Corp., 889 F.2d 1078, 1080 (Fed. Cir. 1989) ("Recognition must be given to the strong public policy favoring expeditious resolution of litigation."). Here, Kaptan has identified no "pressing need" for a stay.

  In response to Kaptan's argument that neither the Government nor Defendant-Intervenors RTAC would suffer specific harm or "fair possibility of prejudice" from the stay of proceedings, the Government argues that "memories of agency personnel and other interested parties will fade. . . . [n]ew personnel may replace the agency employees with knowledge of the case." Pl.'s Br. at 6–7; Def.'s Br. at 6–7. Whether or not those considerations have some merit here, it should be noted that Landis does not always require the showing of "fair possibility of prejudice." See NLMK Pennsylvania, 553 F. Supp. 3d at 1365 ("The lack of prejudice, by itself, is just one factor that may be considered on a motion to stay. The court must balance the competing interests weighing for and against a stay." (citing Landis, 299 U.S. at 254–55)). The interests to be considered, including benefits, harms, and prejudice, are not only those of the litigants, but also of counsel and the court itself. Landis, 299 U.S. at 254. Moreover, interests of the general public,

such as public welfare or convenience, may be considered as well in deciding whether to grant a stay. Id. at 256. Here, in light of the court's overarching duty to timely resolve disputes, the interests of the litigants in resolving disputes quickly, as well as the general interest of the public in expeditiously resolving matters of great economic importance, the court finds that the extensive stay of proceedings requested by Kaptan does not meet the "pressing need" required for such stays. See Landis, 299 U.S. at 255; Cherokee Nation, 124 F.3d at 1416; see also Kahn, 889 F.2d at 1080. Insofar as Kaptan's motion rests on the argument that no or minimal harm would result from the stay, it fails because it does not present "a clear showing of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255; Columbia Forest Prod., 352 F. Supp. 3d at 1276.

There is no talismanic formula for the determination of when a motion to stay proceedings should be granted. To be sure, as Justice Cardozo cautioned "[w]e must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." Landis, 299 U.S. at 256. In the end, after weighing all the relevant considerations, the court concludes that Kaptan's request for a protracted stay should be denied.

## CONCLUSION

For the foregoing reasons, Kaptan's Motion to Stay further proceedings is denied.

**SO ORDERED.**

                /s/   Gary S. Katzmann
                Gary S. Katzmann, Judge

Dated: September 22, 2022
    New York, New York