UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S. | : : : | |
| Plaintiff, | : : | |
| and | : : | |
|  | : | Court No. 22-00149 |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant, | : : | |
| and | : : | |
| REBAR TRADE ACTION COALITION, *et al.*, | : : | |
| Defendant-Intervenors. | : : | |

**PLAINTIFF'S RESPONSE TO ORAL ARGUMENT QUESTIONS**

I. **Questions to Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.**

   1. **Should this case be stayed in its entirety pending the resolution of appellate proceedings in <u>Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States</u> ("<u>Kaptan I</u> Appeal"), No. 24-1431 (Fed. Cir. Docketed Feb. 2, 2024)?**

      a. **Should this case be partially stayed? If so, which issues are severable and ripe for decision?**

**Response**:

We believe that the most efficient procedure going forward in this appeal (hereinafter <u>Kaptan II</u>) is to stay this proceeding in its entirety pending a resolution of the <u>Kaptan I</u> Appeal, as we outlined in our Supplemental Brief filed on November 7, 2023. As discussed in response to the next question, we have not identified any facts that are materially different regarding the cross-ownership issue that would warrant different cross-ownership findings in the two

1

challenged reviews.

We further acknowledge that if the Kaptan I Appeal reverses this Court's final judgment and Commerce's original determination is reinstated, then no remand would be required in this appeal on the cross-ownership issue. However, if the Kaptan I Appeal sustains this Court's final judgment, then a remand would be required in this appeal on the cross-ownership issue since Commerce did not apply the same cross-ownership analysis in the challenged review as it did in the Kaptan I Appeal and there are no facts that would warrant a different analysis. Thus, it would be more efficient to wait for the resolution of the Kaptan I Appeal so that unnecessary, or multiple, remands are not needed.

The Bank and Insurance Transactions Tax ("BITT") issue is ripe for a determination and could technically be "severed". However, efficiency would best be served by staying this issue as well, particularly if the Court determined that a remand was appropriate on this issue. Staying this issue would ensure that only one remand proceeding takes place in this appeal to address the two issues, with one set of comments, and one additional opinion from the court. Severing the issue could cause multiple remand rounds, on different schedules, at significant time and expense for the parties.

> 2. The Government asserts that "[t]he Kaptan I redetermination arose in a distinct proceeding and was decided in response to novel arguments that were not raised in this proceeding and are therefore not part of the relevant record." Def.'s Supp. Br. at 4, Nov. 21, 2023, ECF No. 48 ("Gov't Supp. Br."). Are these assertions correct?

**Response**:

The reference to "novel arguments that were not raised in this proceeding and are therefore not part of the relevant record" is overstated. What the Government references are arguments raised by Kaptan in response to Commerce's draft remand comments in Kaptan I, not

the underlying facts, or Commerce's original determination. In the Kaptan I draft remand, Commerce made incorrect factual statements in a new analysis that found Nur to be cross-owned with Kaptan. In Kaptan's comments on the draft remand, Kaptan pointed out Commerce's factual error and continued to advocate for the very same cross-ownership analysis advocated for in briefing before the Court in both Kaptan I and Kaptan II. In its final remand in Kaptan I, Commerce acknowledged its error and re-analyzed cross-ownership consistent with Kaptan's position in these appeals. Specifically, Commerce took the nature of the input and the nature of Nur's business activities into account when analyzing cross-ownership under 19 C.F.R. § 351.525.

While we acknowledge that Commerce's erroneous draft remand decision in Kaptan I necessitated some marginally different arguments, we note that Kaptan's cross-ownership arguments (and the underlying facts) in its administrative case briefs filed before Commerce in Kaptan I and II were virtually identical. Further, Commerce's original, challenged cross-ownership decision in Kaptan I and Kaptan II was also virtually identical and did not rely on any factual differences between the two reviews. Finally, Kaptan's 56.2 briefs on this issue in Kaptan I and II were also virtually identical. Under these circumstances, a remand on this issue is required consistent with the Kaptan I Appeal.

3. **Kaptan's agency-level case brief focused exclusively on why the Bank and Insurance Transactions Tax ("BITT") exemptions at issue are not "specific as a matter of law" as 19 U.S.C. § 1677(5A)(D)(i) defines the term.** See Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to G. Raimondo, Sec'y of Com., re: Administrative Review of the Countervailing Duty Order on Steel Concrete Reinforcing Bar from Turkey: Kaptan Case Brief at 23–24 (Jan. 13, 2022) ("Kaptan's Case Br."), P.R. 164, C.R. 119. **Kaptan's opening brief, however, focuses on why the BITT exemptions**

> **cannot** be specific as a matter of law under a different provision of the same subsection: 19 U.S.C. § 1677(5A)(D)(ii).  <u>See</u> Pl.'s Br. in Supp. of Mot. for J. on the Agency R. at 39–42, Jan. 13, 2023, ECF No. 29 ("Kaptan's Br."). The relevant portion of that brief makes only a passing reference to § 1677(5A)(D)(i), <u>see</u> <u>id.</u> at 38–39.
>
> a. **Why did Kaptan, by failing to mention § 1677(5A)(D)(ii) in its agency-level case brief, not accordingly fail to administratively exhaust its argument with respect to that provision?  <u>See</u> 28 U.S.C. § 2637(d); <u>Dorbest Ltd. v. United States</u>, 604 F.3d 1363, 1375 (Fed. Cir. 2010).**

**Response**:

  Kaptan did not fail to administratively exhaust its argument with regard to this provision because Commerce's new and more fulsome explanation of its specificity determination in the final IDM triggered for the first time the possible applicability of section 1677(5A)(D)(ii). As explained in Kaptan's Reply brief at 17, Commerce's preliminary specificity determination regarding the BITT was curt and devoid of an explanation on how obtaining an industrial certificate or being available to exporters satisfied the "expressly limited" language under 19 U.S.C. § 1677(5A)(D)(i). Kaptan focused its administrative case brief on why the requirements under the tax law do not trigger the "expressly limited" language in this provision. Commerce then provided a much more fulsome explanation in its final IDM, providing explanation and reasoning not previously presented in the proceeding. *See* Kaptan Reply at 17-20. Upon reviewing this reasoning in preparation for Kaptan's 56.2 brief, we believed that this reasoning now made the exception under § 1677(5A)(D)(ii) alternatively applicable. For example, the Department for the first time discussed whether or not criteria exists to establish what an "industrial establishment" is and whether industrial certificates get granted or denied. IDM at Cmt. 3. Thus, Kaptan's arguments regarding section 1677(5A)(D)(ii) and the fact that all Turkish enterprises are required "to obtain industrial registry certificates" were simply a response

to arguments raised by the Department for the first time in the Final Results, to which Kaptan had no previous opportunity to respond.

> b. **Assuming hypothetically that Kaptan failed to exhaust its § 1677(5A)(D)(ii) claim, has Kaptan waived its entire argument in this case regarding Commerce's determination that the BITT exemptions are specific**?

**Response**:

No, because Kaptan nevertheless identified facts to show that the program could also not be considered "expressly limited" under § 1677(5A)(D)(i) since it is available to all manufacturers and exporters. In other words, either the underlying facts show that the program is not "expressly limited" or, if it is expressly limited, then the § 1677(5A)(D)(ii) exception applies and the "limiting" criteria is objective and neutral. Ultimately, both arguments go to whether or not Commerce's finding of specificity under § 1677(5A)(D)(i) was supported by substantial evidence and/or contrary to law.

> 4. **What is the bearing of the issues in this case ("Kaptan II")—and the court's potential resolution of them—on the issues in Kaptan Demir Celik Endustrisi veTicaret A.S. v. United States, Court No. 23-131 (CIT filed June 21, 2023) ("Kaptan III")? In your answer, please address each of the issues in Kaptan III.**

**Response**:

Kaptan III raises two issues – (1) specificity of the BITT program, and (2) the benchmark selected for determining the benefit of Nur's land.[1] Whether or not Nur was a cross-owned affiliate of Kaptan in the challenged review is not on appeal in Kaptan III as this issue was not raised in that review.

---

[1] The undersigned did not represent Kaptan in the challenged 2020 review in Kaptan III and is not representing Kaptan in Kaptan III.

Based upon our review of the briefs filed in Kaptan III, it appears that the BITT specificity arguments are similar in the two appeals. It does appear that Kaptan III may have a slightly different factual record and additional arguments raised. Thus, the Court's decision on this issue in Kaptan II will strongly inform the Court's decision in Kaptan III but will not necessarily be determinative.

A decision in Kaptan II will likely not affect the benchmark argument Kaptan III. While there are benchmark issues raised Kaptan II, we believe that, like Kaptan I, those Kaptan II benchmark issues will become moot should the Court similarly reverse cross-ownership.

5.   **What authorities best support your overall argument?**

(a) Cross-ownership

- Kaptan I

- Gujarat Fluorochemicals Ltd. v. United States, 617 F. Supp. 3d 1328, 1335 (Ct. Int'l Trade 2023)

- Countervailing Duties; Final Rule, 63 Fed. Reg. 65,348 (Nov. 25, 1998)

- Forged Steel Fluid End Blocks From the Federal Republic of Germany: Final Affirmative Countervailing Duty Determination, 85 Fed. Reg. 80,011 (Dec. 11, 2020), and accompanying IDM at Cmt. 14

- Certain Glass Containers From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 85 Fed. Reg. 31,141 (May 22, 2020), and accompanying IDM at Cmt. 12.

(b) Specificity

- The facts of this case – this argument is a factual one and turns on whether the facts of this case fall within the "expressly limited" language in section 1677(5A)(D)(i) or the objective criteria language of 1677(5A)(D)(ii).

6.   **Aside from the Kaptan I Appeal and Kaptan III, are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?**

**Response**:

<u>Cross-ownership</u>

In our reply brief we relied in part on <u>Nucor Corporation v. United States</u>, Court No. 21-00182, Slip Op. 22-116 (October 5, 2022) and the subsequent remand determination by Commerce dated January 31, 2023. That remand redetermination was later remanded again by the court (Slip Op. 23-119) and Commerce issued its redetermination on December 19, 2023. In that second remand redetermination, Commerce ultimately found that that the scrap input supplier and the respondent were not cross-owned because of the lack of a control relationship on December 19, 2023. Similar facts are not present in this case.

<u>Specificity</u>

On November 14, 2023, the court issued Slip Op. 23-159 in <u>BGH Edelstahl Siegen GMBH v. United States</u> (Ct. No. 21-80). At issue in that case is whether the "KAV program" is *de jure* specific under § 1677(5A)(D)(i) or whether the law has sufficiently objective criteria under § 1677(5A)(D)(ii). We draw the Court's attention to this case for the discussion of these two provisions. Ultimately the court held:

> Commerce's position where "implementing legislation expressly limit[s] access to the 'group' that the legislation itself created" the subsidy is de jure specific, see Second Remand Results at 11, is contrary to law. The statute allows a subsidy to be limited to fewer than all enterprises or industries in an economy, so long as that criteria creating that legislation is objective. SAA at 4242 (noting that the purpose of the specificity functions to allow subsidies which "truly are broadly available and widely used throughout an economy"). The Court remands to Commerce for further consideration or explanation. Commerce can either explain and support its determination that the criteria are not neutral, (i.e., are not economic in nature and horizontal in application) or conduct a de facto analysis or reconsider its determination. Commerce cannot rely upon its determination by "expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical

7

in nature" as that determination is contrary to law. See Remand Results at 11.

Id. at 12-13; see also BGH Edelstahl Siegen GmbH v. United States, 639 F. Supp. 3d 1237, 1243-44 (Ct. Int'l Trade 2023) (discussing § 1677(5A)(D)(i) and (ii) in more detail).