United States Court of International Trade
One Federal Plaza
New York, NY 10278

CHAMBERS OF
Gary S. Katzmann
JUDGE

October 28, 2026

Andrew Thomas Schutz
Grunfeld, Desiderio, Lebowitz
Silverman, & Klestadt LLP
1201 New York Avenue, NW, Suite 650
Washington, D.C. 20005

Sosun Bae
U.S. Department of Justice
Commercial Litigation Branch – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Laura El-Sabaawi
Wiley Rein, LLP
2050 M Street, NW
Washington, D.C. 20036

**Re: Questions for Oral Argument re: Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, Court No. 22-00149**

Dear Counselors:

Oral argument in this case will be held in the James L. Watson Courthouse on Tuesday, November 17, 2026, in Courtroom 1 at 2:30 p.m. The argument, if public and not closed, will be recorded and may be made available to the public via the court's website. If you will be requesting a closed argument or portions of the argument, please inform my case manager, Jason Chien, by 12:00 p.m. on Tuesday, November 10, 2026. The court encourages the parties to maintain a public argument if possible.

The court has reviewed the parties' briefs and documents and would like counsel to submit answers in writing to the court's questions by 12:00 p.m. on Tuesday, November 10, 2026. The questions should not be construed as suggesting that the court has made any conclusive

determinations prior to argument. Parties shall file public and, if necessary, confidential versions of their answers, of not more than 3,000 words.

The oral argument will be dedicated to rebuttal arguments to the answers filed by opposing counsel. The court will also permit but not require brief opening statements. The length of parties' presentations shall not exceed twenty-five (25) minutes for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") and twenty-five (25) minutes for Defendant the United States ("the Government") and Defendant-Intervenors Rebar Trade Action Coalition and its members ("the Coalition"), with such time to be divided by them by notification to the case manager.

## I. Questions for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.

1. You cite previous administrative proceedings in which Commerce determined that affiliates "that do not produce inputs" were not cross-owned input suppliers within the meaning of 19 C.F.R. § 351.525(b)(6)(iv). See Pl. Kaptan's Cmts. in Opp'n of Commerce's Remand Redetermination at 4–5, June 18, 2026, ECF No. 77 ("Pl.'s Remand Cmts."). Given that Nur provided Kaptan with steel scrap it produced ("produced scrap") and scrap it purchased from third parties ("procured scrap"), see id. at 2–3, how are the cited determinations relevant to this case?

2. What record evidence best supports your argument that Nur and Kaptan's bookkeeping practices indicate only procured scrap was used for production of rebar under the tolling arrangement? See Pl.'s Remand Cmts. at 5–6.

3. You state that the five factors evaluated by Commerce "are the appropriate factors to analyze" to determine whether Nur is a cross-owned input supplier, and you disagree with "how the facts of this case were applied to those factors." Pl.'s Remand Cmts. at 3.

   i. Under which of the five factors do you disagree with how Commerce applied the facts of this case?

   ii. Under which of the five factors do you argue the tolling arrangement is relevant to analyze?

4. You "agree that . . . secondary business activities in the purchase of scrap and sale of subject merchandise can and should be considered and analyzed," and you disagree "that these activities tip the scale in this instance." Pl.'s Remand Cmts. at 7. Why, in your view, is Commerce's evaluation of Nur's secondary business activities unsupported by substantial evidence or otherwise not in accordance with law?

5. Please respond to the Coalition's assertion that even if "[Kaptan] used no Nur-generated scrap in support of its toll-production of rebar for Nur, Commerce's cross-attribution decision would remain reasonable and appropriate" based on "the very existence of the tolling agreement . . . ." See Rebar Trade Action Coalition's Cmts. in

Supp. of Remand Determination at 8–9, July 20, 2026, ECF No. 83 (Def.-Inters.' Remand Cmts.").

6. Please respond to the Government's assertion that 19 U.S.C. § 1677(5A)(D)(ii) "provides a standalone exemption from countervailing duties" and Kaptan therefore had the "burden to establish the exemption given that Commerce is not required to address exemptions unless requested by an interested party." See Def.'s Post-Arg. Br. at 1–2, May 1, 2024, ECF No. 62.

7. What is the bearing of Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 49 CIT __, 803 F. Supp. 3d 1276 (2025) ("Kaptan III") and Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 49 CIT __, 803 F. Supp. 3d 1291 (2025) ("Kaptan IV"), if any, on the issues in this case?

    i. You challenge Commerce's determination that Nur's land use agreement "was not a lease and that this agreement instead provided a good for [less than adequate renumeration] . . . ." Pl.'s Mot. for J. on the Agency R. at 25, Jan. 13, 2023, ECF No. 29 ("Pl.'s Br.") (emphasis added). In subsequent administrative reviews, Commerce both considered the land provided to Nur a "rent-free lease" and a good provided for less than adequate renumeration. See, e.g., Final Results of Redetermination Pursuant to Court Remand Order at 1, Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, No. 24-00096 (U.S. Ct. Int'l Trade filed May 30, 2024), Mar. 6, 2026, ECF No. 59-1 ("Kaptan IV Remand Results"). How is the distinction between a lease and an easement relevant to Commerce's treatment of the benefit as revenue forgone or a good provided for less than adequate renumeration?

    ii. What, if anything, distinguishes Commerce's determination that the BITT exemption is de jure specific in this case from determinations the court previously remanded? See, e.g., Kaptan IV, 803 F. Supp. 3d at 1303–04.

8. What cases and authorities best support your argument?

9. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

## II. Questions for Defendant the United States

1. In Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 159 F.4th 1334 (Fed. Cir. 2025) ("Kaptan I"), the court sustained Commerce's determination that Nur's "unprocessed steel scrap was a common input used in a variety of products and industries." Id. at 1341. You state that "unlike in Kaptan I, the record of this underlying administrative proceeding demonstrates that Nur and Kaptan had a tolling agreement . . . ." Def.'s Cmts. in Supp. of Remand Redetermination at 6, July 20, 2026, ECF No. 79 ("Gov't Remand Cmts."). How does the tolling agreement demonstrate that the scrap in this case is "merely a link in the overall production chain" rather than a common input? Final Results of Remand Redetermination Pursuant to Court Remand at 11, May 13, 2026, ECF No. 71-1 ("Remand Results").

2. What record evidence best supports Commerce's determination that " 'Nur both produced scrap and acquired additional scrap from other producers' to meet the terms of the tolling agreement"? Gov't Remand Cmts. at 7 (quoting Remand Results at 15).

3. What authorities best support Commerce's analysis of Nur's secondary business activity under the cross-owned input supplier criteria? See Remand Results at 14, 16–17; Pl.'s Remand Cmts. at 7–8.

4. Please respond to the Coalition's assertion that even if "[Kaptan] used no Nur-generated scrap in support of its toll-production of rebar for Nur, Commerce's cross-attribution decision would remain reasonable and appropriate" based on "the very existence of the tolling agreement . . . ." Def.-Inters.' Remand Cmts. at 8–9.

5. Did Commerce (1) address Kaptan's argument "that it is inappropriate to use the rental benchmarks provided by [the Coalition] given the fact that they cover the use of land and facilities, while Nur's land is exclusive of the facilities that Nur developed and built on the land" and (2) explain its decision to not "adjust [the Coalition's] land rental benchmark by the rental ratio outlined in Nur's land contract[,]" as Kaptan suggested? Pl.'s Br. at 36, 38.

6. What supports your assertion that 19 U.S.C. § 1677(5A)(D)(ii) "provides a standalone exemption from countervailing duties" and Kaptan therefore had the "burden to establish the exemption given that Commerce is not required to address exemptions unless requested by an interested party." See Def.'s Post-Arg. Br. at 1–2.

7. What is the bearing of Kaptan III, 803 F. Supp. 3d at 1276, and Kaptan IV, 803 F. Supp. 3d at 1291, if any, on the issues in this case?

    i. You argue that "the terms outlined in the contract do not constitute a lease; accordingly, there is no rental price being foregone by the government." Def.'s Opp'n to Pl.'s Mot. for J. on the Agency R. at 22, Apr. 6, 2023, ECF No. 33. In subsequent administrative reviews, Commerce considered the land provided to Nur a "rent-free lease" not a conditional easement. See, e.g., Kaptan IV Remand Results at 1. What specific contract terms support Commerce's determination here?

    ii. What, if anything, distinguishes Commerce's determination that the BITT exemption is de jure specific in this case from determinations the court previously remanded? See, e.g., Kaptan IV, 803 F. Supp. 3d at 1303–04.

8. What cases and authorities best support your argument?

9. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

## III. Questions for Defendant-Intervenors the Rebar Trade Action Coalition and its Individual Members

1. The court in Kaptan I sustained Commerce's determination that Nur's "unprocessed steel scrap was a common input used in a variety of products and industries." Kaptan I, 159 F.4th at 1341. You state that the record in this case differs because Nur provided scrap to Kaptan through a tolling arrangement. See Def.-Inters.' Remand Cmts at 9. How does the tolling agreement demonstrate that the scrap in this case is "merely a link in the overall production chain" rather than a common input? Remand Results at 11.

2. You assert that even if "[Kaptan] used no Nur-generated scrap in support of its toll-production of rebar for Nur, Commerce's cross-attribution decision would remain reasonable and appropriate" based on "the very existence of the tolling agreement . . . ." Def.-Inters.' Remand Cmts. at 8–9. What authority best supports this argument?

3. What authorities best support Commerce's analysis of Nur's secondary business activity under the cross-owned input supplier criteria? See Remand Results at 14, 16–17; Pl.'s Remand Cmts. at 7–8.

4. You state that "Congress has stated that benefit assessments should turn, wherever possible, on the commercial value of the subsidy program, i.e., what the subsidy recipient would have had to provide a commercial, private actor in order to obtain that same benefit." Def.-Inter.'s Resp. in Opp'n to Pl.'s Mot. for J. on Agency R. at 16, Apr. 6, 2023, ECF No. 31. What authorities best support this assertion?

5. Did Commerce (1) address Kaptan's argument "that it is inappropriate to use the rental benchmarks provided by [the Coalition] given the fact that they cover the use of land and facilities, while Nur's land is exclusive of the facilities that Nur developed and built on the land" and (2) explain its decision to not "adjust [the Coalition's] land rental benchmark by the rental ratio outlined in Nur's land contract[,]" as Kaptan suggested? Pl.'s Br. at 36, 38.

6. Please respond to the Government's assertion that 19 U.S.C. § 1677(5A)(D)(ii) "provides a standalone exemption from countervailing duties" and Kaptan therefore had the "burden to establish the exemption given that Commerce is not required to address exemptions unless requested by an interested party." See Def.'s Post-Arg. Br. at 1–2.

7. What is the bearing of Kaptan III, 803 F. Supp. 3d at 1276, and Kaptan IV, 803 F. Supp. 3d at 1291, if any, on the issues in this case?

    i. Do the court's decisions regarding Commerce's selection of a benchmark to value Nur's land in subsequent administrative reviews bear on this case? See, e.g., Kaptan III, 803 F. Supp. 3d at 1288–1291.

    ii. What, if anything, distinguishes Commerce's determination that the BITT exemption is de jure specific in this case from determinations the court previously remanded? See, e.g., Kaptan IV, 803 F. Supp. 3d at 1303–04.

8. What cases and authorities best support your argument?

9. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

Sincerely,

Gary S. Katzmann
Judge